FILED
2021 Oct-27  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JONATHAN BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 7:21-cv-_____ |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| MENTAL HEALTH, AND | ) | |
| FICTITIOUS DEFENDANTS, | ) | |
| FORENSIC TECHNICIAN | ) | |
| HUMPHREY (FIRST NAME | ) | |
| UNKNOWN) AND FORENSIC | ) | |
| TECHNICIAN ARCHIBALD | ) | |
| (FIRST NAME UNKNOWN), | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

## **PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate the plaintiff's rights under the United States Constitution, the Alabama State Constitution, and the statutory laws of the United States and the laws of Alabama.

2. Plaintiff brings this action under Title 42 U.S.C. §§ 1983[1], 42 U.S.C. § 1988 and the Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C.A. § 794, and the Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7,[2] the

---

[1] No claim is made against the Department under § 1983.

[2] See 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794]......, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

Americans with Disabilities Act, as well as under various state law causes of action.

## STATEMENT OF THE PARTIES

3.      The Plaintiff realleges and incorporates by reference each of the above proceeding paragraphs with the same force and effect as if fully set out in specific detail herein.

4.      The Plaintiff, Johnathan Baker, is over the age of nineteen (19) and is a resident citizen of the State of Alabama.

5.      The Defendant,[3] Alabama Department of Mental Health (hereinafter "ADMH" or "Department"), is an agency of the State of Alabama.

6.      The Fictitious Defendant,[4] Forensic Technician Humphrey (first name unknown) is a Forensic Technician at Taylor Hardin. He was responsible for the safe and humane treatment of patients at ADMH including Baker. He is named as a Fictitious Party. He will be substituted as a named party upon discovery of his first name.

     a.      Defendant Humphrey's full name is a matter of record with ADMH. Discovery will reveal his first name. Plaintiff's counsel will substitute the full name for FT Humphrey upon its discovery.

7.      The Fictitious Defendant, Forensic Technician Archibald (first name unknown) is a Forensic Technician at Taylor Hardin. He was responsible for the safe and

---

[3] The Plaintiff notes that typographical errors might occur in this and subsequent Complaints and in other pleadings relating to the characterization of the Defendants, whether in their official or individual capacities. The improper labeling of an individual Defendant could have a significant impact upon recoverable damages. For this reason, the Plaintiff states that mislabeling an individual Defendant as being sued in their official capacity or individual capacity, does not constitute a waiver of damages against the Defendants.

[4] There are exceptions to the general rule that fictitious party pleadings are not allowed in federal court. "It is important to distinguish suing fictitious parties from real parties sued under a fictitious name. There may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name. Also, one may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly." *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir.1992) (quoting *Bryant v. Ford Motor Co.*, 832 F.2d 1080, 1096 n. 19 (9th Cir.1987)) (Kozinski, J., dissenting).

humane treatment of patients at ADMH including Baker.

a.    Defendant Archibald's full name is a matter of record with ADMH.
Discovery will reveal his first name. Plaintiff's counsel will substitute
the full name for FT Archibald upon its discovery.

## STATEMENT OF FACTS

8.    The Plaintiff realleges all prior paragraphs of the Complaint as if set out fully
herein.

9.    The Alabama Department of Mental Health owns, controls, and staffs
numerous mental health facilities in the state of Alabama. One such facility is
Taylor Hardin Secure Medical Facility, located in Tuscaloosa County,
Alabama.

10.   "Taylor Hardin Secure Medical Facility (THSMF) is a 140-bed psychiatric
hospital that provides comprehensive psychiatric evaluations and treatment to
criminally committed male patients." (Taylor Hardin, Patient and Family
Handbook, p. 4).

11.   The Department has a Patient Bill of Rights. One such right is the right to a
safe and humane environment for patients like Johnathan Baker.

12.   The Patient Bill of Rights states in part, "Safe and Humane Environment.  You
have the right to receive services in an environment which is safe, clean, and
where staff  treat you respectfully." (Taylor Hardin, Patient Bill of Rights, p.
2).

13.   "Safe and Humane Environment. You have a right to safe and humane living
areas and treatment to maintain your positive self-image and human dignity.
(Taylor Hardin, Patient Bill of Rights, p. 14).

14.   On November 7, 2019, Baker presented to the Emergency Department at DCH
Regional Medical Center after an assault by Forensic Technicians, aka Mental
Health Workers, at Taylor Hardin.

15.   All of these injuries were caused by direct blows from Forensic Technicians
("FT") at Taylor Hardin in abusing attacks on Baker.

16.  The two FT's (and others) known to have assaulted Baker are FT Humphrey and FT Archibald. Their first names are unknown. However, both FT's physically assaulted Baker in violation of clearly established policies and procedures of the Department and the Patient Bill of Rights at Taylor Hardin.

17.  One such policy is Policy 19-10. Under no circumstance is a mental health worker employed by ADMH or any group home in the state of Alabama ever allowed to neglect, abuse, mistreat or exploit a mental health patient. (ADMH Policy 19-10).

18.  The abuse and mistreatment of Baker by Department FT's violated Policy 19-10).

19.  Mental Health Workers and FT's under no circumstances have any discretion in whether or not to follow Policy 19-10 to the letter. There is no justification of the violation of Policy 19-10. It is a ministerial duty without discretion.

20.  The abuse and mistreatment of Baker by FT Humphrey and FT Archibald also violated the Patient Bill of Rights at Taylor Hardin. Under the Patient Bill of Rights, every patient, including Baker, is entitled to a safe and humane environment. This is not only a clearly established policy, but is Baker's Constitutional right under the United States Constitution.

21.  On September 20, 2019, Baker was admitted to Northport DCH. He was diagnosed with a fracture of the left tenth rib. An x-ray at DCH of October 5, 2018, showed fractures of the anterolateral aspect of the right seventh through ninth ribs suggestive of subacute fractures with healing. His injuries were the result of assault by FT Humphrey and FT Archibald. These injuries were inflicted on Baker in violation of clearly established rules at Taylor Hardin prohibiting abuse, mistreatment and exploitation (Policy 19-10), and failing to provide a safe and humane environment.

22.  In November 2019, Baker was punched several times in the face by FT's at Taylor Hardin. He presented to the DCH Emergency Department with reports of a head injury, blood around the nose and ears and blood in his ears, a hematoma and abrasions to the face. He complained of headache and hand pain. As a direct result of the assault, he suffered a closed head injury, facial contusions, and acute fractures of the right ring finger and right small finger.

23.    His injuries were the result of assault by FT Humphrey and FT Archibald. These injuries were inflicted on Baker in violation of clearly established rules at Taylor Hardin prohibiting abuse, mistreatment and exploitation (Policy 19-10), and failing to provide a safe and humane environment.

24.    FT's Archibald and Humphrey are employees of ADMH. They are required to ensure a safe and humane environment for Baker. They are never allowed to provide medical care, give prescription medications, or abuse or mistreat a patient. They have no discretion but to follow these policies to the letter.

25.    Taylor Hardin Policy 19-10 states, "Any form of client abuse, neglect, exploitation or mistreatment will not be tolerated. The DMH/MR will immediately investigate and will provide for appropriate legal and administrative actions."

26.    As a male client of Taylor Hardin suffering from schizophrenia and other disabling disorders, is disabled within the meaning of the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act.

27.    Rather than following the prescribed method of dealing with any of Baker's aggressions or outbursts, FT Humphrey and FT Archibald violated clearly established restraint techniques and patient handling techniques and abused and mistreated Baker. They blacked his eyes, broke his ribs, and broke his fingers.

28.    It is a violation of Taylor Hardin Policy 19-10 to abuse, mistreat or exploit a mental health patient. FT Archibald and FT Humphrey did not have any discretion to violate Policy 19-10. Their duties are purely ministerial and not discretionary.  Thus, they are not entitled to discretionary function or state-agent immunity for their abuse and mistreatment of Baker.

29.    ADMH Policy 19-25 requires ADMH to report all instance of abuse, neglect, exploitation and mistreatment to the Department of Human Resources.  The policy states, "In accordance with state law, the Department of Mental Health [ ] shall report to the Department of Human Resources (DHR) cases of abuse, neglect, or exploitation involving persons receiving services in state operated DMH/MR residential facilities (with the exception of psychiatric nursing

home(s)) when there is reasonable cause to suspect that abuse, neglect or exploitation has occurred."

30.     Upon information and belief, ADMH violated Policy 19-25 and did not report to FT Humphrey and FT Archibald abused and mistreated Baker in September, October, and November 2019.

31.     FT Humphrey and FT Archibald failed to protect Baker from abuse and exploitation. They also failed to report, as required by ADMH rules and regulations, the assault of a patient.  At all times, they were engaged in ministerial duties and had no discretionary duties.

32.     FT Humphrey and FT Archibald are extensively trained in the anti-abuse policies of ADMH. They would have been well versed and trained by ADMH in restraint policies and procedures for aggressive patients. Thus, they had a subjective and objective knowledge that their abuse and mistreatment of patient would cause his substantial harm. In fact, they did cause him substantial harm in the form of black eyes, broken ribs, bruises, hematomas, closed head injury, and broken fingers.

## COUNT I
## CIVIL ACTION FOR DEPRIVATION OF RIGHTS
## 42 U.S.C. § 1983

33.     The Plaintiff realleges and incorporates by reference each of the above proceeding paragraphs with the same force and effect as if fully set out in specific detail herein.

34.     This Count is brought against the individual defendants in their individual capacities.

35.     Disabled patients such as the plaintiff who are entrusted to the care of the Department have a liberty interest in their personal safety and bodily integrity which is protected by the Due Process Clause of the 14th Amendment.  U.S.A. Const. Amend. 14.

36.     FT Humphrey and FT Archibald, who were responsible for the care, well-being and protection of Baker, while acting under color of state law, statute, ordinance, regulation, custom and usage, subjected Baker to unequal protection

under the law of the United States by failing to exercise due care and by abusing and neglecting and mistreating him in violation of clearly established rules, policies, regulations and patient rights of ADMH that specifically prohibit such activity.

37. Physical abuse may rise to a level of a constitutional violation, for purposes of the § 1983 claim, and, in making that determination, courts consider whether the abuse is literally shocking to the conscience. 42 U.S.C. § 1983.

38. In September, October, and November 2019, FT Humphrey and FT Archibald failed to adequately safeguard Baker, failed to carry out their ministerial duties, physically abused and mistreated Baker, and/or failed to report their abuse and mistreatment of Baker as required by Policy 19-25.

39. The failure to protect the plaintiff and to provide adequate security and care for him were the result of the deliberate indifference of the defendants to Baker's liberty interest in safety and security and a safe and humane environment.

40. As a proximate result thereof, Baker suffered injury and harm.

## COUNT II
## § 504 OF THE REHABILITATION ACT OF 1973

41. The Plaintiff realleges and incorporates by reference each of the above proceeding paragraphs with the same force and effect as fully set out in specific detail herein.

42. The Rehabilitation Act of 1973 provides a private cause of action prohibiting discrimination against handicapped individuals under any program or activity receiving federal financial assistance. Rehab. Act 1973, § 504, as amended; 29 U.S.C.A. § 794.

43. This Count is brought against ADMH as a recipient of federal funds for monetary damages and other relief available under §504.

44. Baker suffers from schizophrenia, seizure disorders, bipolar disorders and various other afflictions. As a result, he was placed involuntarily in a state-operated mental health facility. His mental and physical impairments substantially limit his ability to enjoy major life activities outside of Taylor

Hardin.  He is disabled within the meaning of §504.

45.   The Department and Taylor Hardin provided residential services to those disabled individuals who are in need of institutional care.  The Department and Taylor Hardin provides services for patients of all ages from infants to seniors with the assistance of state funds, Medicaid, home- and-community-based waiver federal funds, Part C federal funds from the U.S. Department of Education and other funding sources.  According to the ADMH general budget for 2006-2007, ADMH received approximately $502,537,476 in federal financial assistance for the 2006-2007 operating year.[5]  As a recipient of the federal financial assistance, the Department is subject to the terms of §504 of the Rehabilitation Act of 1973, as amended.

46.   States waive their 11th amendment immunity to suit under §504 by accepting federal funds used for the care and treatment of the mentally disabled.  Garrett v. University of Alabama at Birmingham Bd. of Trustees, 344 F.3d 1288, 1293 (11th Cir. 2003); see also, 42 U.S.C. § 2000d-7(a).  The United States Supreme Court specifically held that a private right of action is created under § 504. See, Barnes v. Gorman, 536 U. S. 181 (2002).

47.   The Federal Government may condition receipt of federal funds upon a waiver of state sovereign immunity.  See Atascadero State Hosp. v. Scanlon , 473 U.S. at 238 n. 1, 105 S.Ct. 3142 (noting that "a State may effectuate a waiver of its constitutional immunity...but otherwise waiving its immunity to suit in the context of a particular federal program").

48.   The Rehabilitation Act and the Civil Rights Remedies Equalization Act provide for the clear and unambiguous waiver of the State's sovereign immunity upon the state's receipt of federal funds.  42 U.S.C. 2000d-7(a) "manifests an unmistakable intent to condition federal funds on a state's waiver of sovereign immunity."

49.   The Rehabilitation Act conditions the receipt of federal funds under the Rehabilitation Act upon a state's agreement to forego the 11th Amendment defense.  Nihser v. Ohio, E.P.A., 269 F.3d at 628.

---

[5]

www.mh.alabama.gov/COPI/MediaCenter/AnnualReport/COPI80821_AnnualReport_FY07.pdf.

50.   The physical abuse and denial of those rights provided by the laws and constitution of the United States, as well as state rights, suffered by the plaintiff, entitles him to recovery against the named department under §504.

51.   Baker is entitled to all the damages for his State and federal rights pled in this Complaint including, but not limited to, damages for emotional distress.  The United States Supreme Court in Schultz v. Young Men's Christian Associates of the United States, 139 F.3d 286, 291 (1st Cir. 1998), suggested that in a suit under § 504, "damages for emotional distress [might] be justified to punish patent misbehavior or the deliberate infliction of humiliation."

52.   Baker was abused and mistreated by Forensic Technicians Humphrey and Archibald while they were acting as employees of the Department. Baker was subjected to physical abuse, humiliation, deliberate indifference, neglect, and/or mistreatment.  His treatment was degrading, humiliating and shocking to the conscience of members of our society.  The FT's assigned to protect and care for Baker, failed in their ministerial duties by failing to protect Baker from abuse, neglect, and mistreatment and by subjecting him to abuse and mistreatment in violation of the United States Constitution and clearly established regulations, policies, and procedures of ADMH.

53.   The conduct of FT Humphrey and FT Archibald  meets any intentionality requirements of §504.

54.   The remedies, procedures and rights set for in Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) are available to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance under § 794 of the Rehabilitation Act of 1973. 29 U.S.C. § 794(a)(2).

55.   The United States Supreme Court's decision in Franklin v. Gwinnett County Public Sch., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), now provides the dispositive analysis for determining what remedies are available under the Rehabilitation Act.  In Franklin, the Supreme Court reaffirmed the longstanding principle that "where legal rights have been invaded, and the federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the law done." Franklin, 503 U.S. 60, 112 S.Ct. at 1033 (quoting Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)).

56.    As a proximate result of the department's violation of the requirements of §504, Baker suffered injury and harm.

## COUNT III
## NEGLIGENCE/WANTONNESS

57.    The Plaintiff realleges and incorporates by reference each of the above proceeding paragraphs with the same force and effect as fully set out in specific detail herein.

58.    ADMH staff was responsible for following the rules, regulations, policies and procedures of ADMH concerning the humane and safe treatment of recipeint residents. FT Humphrey and FT Archibald negligently and/or wantonly failed to follow the rules, regulations, policies and procedures of ADMH applicable to Taylor Hardin, including but not limited to Policies 19-10, 19-25, 20-36, and 70-5.

59.    It is a violation of policies and procedures for metal health workers like FT's, operating under ADMH rules and regulations, to physically abuse, neglect, exploit and/or mistreat a patient recipient.

60.    It is a violation of policies and procedures of ADMH to fail to report physical abuse, neglect, exploitation and/or mistreatment of a recipient patient to the Alabama Department of Human Resources.

61.    Employee mental health workers for Taylor Hardin violated clearly established rules and regulations promulgated by ADMH for the care and treatment of recipient residents such as Baker.

62.    FT Humphrey and FT Archibald failed to follow ADMH policies, rules and/or regulations that prohibit abuse, neglect, and mistreatment, rules that require violations be reported to DHR, and rules requiring a safe and humane environment for recipient patients such as Baker.

63.    The staff of Taylor Hardin was likewise negligent and/or wanton in failing to protect Baker from abuse, neglect, mistreatment and exploitation, regardless of the applicability of any ADMH policy, rule or regulation.

64.     As a proximate result thereof, Baker suffered injury and harm.

## COUNT IV
## ASSAULT/BATTERY/NEGLECT/MISTREATMENT

65.     FT Humphrey and FT Archibald abused, battered, mistreated, and neglected Baker.

66.     As a proximate result, Baker suffered injury and harm.

## COUNT V
## HARASSMENT - ADA AND REHAB ACT

67.     Baker was subjected to unlawful harassment by FT Humphrey and FT Archibald.

68.     It is unlawful under the Rehabilitation Act to harass a disabled person.  *See, e.g., Gaither v. Barron*, 924 F. Supp. 134 (M.D. Ala. 1996).

69.     "EEOC regulations to the ADA state that 'it is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this part.'"  *Haysman v. Food Lion*, 893 F. Supp. 1092 (S. D. Ga. 1995) (citing 29 C.F.R. § 1630.12).

70.     As a proximate result, Baker suffered injury and harm.

## COUNT VI
## NEGLIGENT/WANTON
## HIRING/RETENTION/TRAINING/SUPERVISION

71.     The defendant ADMH negligently and/or wantonly hired, retained and/or supervised FT Humphrey and FT Archibald. Upon information and belief, they were caught on camera abusing and mistreating Baker but retained their employment.

72.     The failure to properly hire, supervise, retain, and/or train FT Humphrey and FT Archibald was the proximate cause of the injuries suffered by Baker.

## COUNT VII
## VIOLATION OF FAIR HOUSING ACT

73.  The Fair Housing Act prohibits discrimination or retaliation against disabled individuals. 42 U.S.C. § 3601 et seq. "Originally Title VIII of the Civil Rights Act of 1968, the Fair Housing Act prohibited discrimination in housing on the  basis of race, color, religion, national origin, and, later, gender. See Pub. L. No. 90-284, 82 Stat. 81 (1968); Pub. L. No. 93-383, 88 Stat. 729 (1974). The Fair Housing Amendments Act of 1988 amended the Fair Housing Act (as amended, the "FHA") to bar housing discrimination based on disability. See Pub. L. No. 100-430, 102 Stat. 1619 (1988) (codified at 42 U.S.C. § 3604(f))." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 (11th Cir. 2016) (holding that failure to renew lease for resident whose son had Down Syndrome was violation of FHA).

74.  Baker lived in a residential mental health facility. These facilities are covered by the FHA. The Eleventh Circuit holds that group homes are "dwellings" under the FHA. *See, e.g., Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1215 (11ᵗʰ Cir. 2008) (holding that a group home for substance abusers meets the definition of a dwelling under the FHA). "On these facts, the district court concluded that the group homes were 'dwellings' under the Fair Housing Act because 'plaintiffs' occupancy resembles that of a resident far more than that of a hotel guest.'" *Schwarz,* 544 F.3d at 1215.

75.  "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

76.  There is no requirement for the exhaustion of an administrative remedy under the FHA. See 42 U.S.C. § 3613(a)(2), "An aggrieved person may commence a civil action under this subsection whether or not a complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint, but if the Secretary or a State or local agency has obtained a conciliation agreement with the consent of an aggrieved person, no action may be filed under this subsection by such aggrieved person with respect to the alleged discriminatory housing practice which forms the basis for such complaint except for the purpose of enforcing the terms of such an agreement."

77.  HUD issued regulations relating to the FHA. 24 CFR § 100.400 sets

forth prohibited conduct. Section 100.400(b) states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this part." Section 100.400© includes "handicap" as a protected status under the FHA. Section 100.400 (2) provides that the statute applies to "visitors or associates" of such persons. Section 100.400 (4) prohibits "Intimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part." Section 100.400(5) prohibits "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." Section 100.400(6) prohibits "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority."

78.     A claim for retaliation under § 3617 is not dependent on a successful claim or other claim under the FHA. Plaintiffs are entitled to bring standalone claims for retaliation under § 3617, regardless of whether discrimination occurred. *See, e.g., Hidden Vill. LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528-29 (6th Cir. 2013) ("Section 3617 nowhere says thatit comes into play only when a violation of one of these other sections has also occurred."); *Bloch v. Frischholz*, 587 F.3d 771, 781-82 (7th Cir. 2009) ("Coercion, intimidation, threats, or interference with or on account of a person's exercise of his or her §§ 3603–3606 rights can be distinct from outright violations of §§ 3603-3606."; *United States v. Koch*, 352 F. Supp. 2d 970, 978 (D. Neb. 2004) (holding that § 3617 claims may stand alone and noting that a contrary interpretation would render § 3617 redundant). As the Ninth Circuit stated in Smith v. Stechel, 510 F.2d 1162, 1164 (9th Cir. 1975):Section 3617 Bakers not necessarily deal with a discriminatory housing practice, or with the landlord, financer or brokerage service guilty of such practice. It deals with a situation where no discriminatory housing practice may have occurred at all because the would-be tenant has been discouraged from asserting his rights, or because the rights have actually been respected by persons who suffer consequent retaliation. It also deals with situations in which the fundamental inequity of a discriminatory housing practice is compounded by coercion, intimidation, threat or interference.

79.    As a matter of law, even if a person is mistaken in their belief that they are acting to protect fair housing rights, they are still entitled to the protection of the FHA's anti-retaliation provisions. *See Broome v. Biondi*, 17 F.Supp.2d 211, 219 (S.D.N.Y. 1997) (holding that a person claiming violation of § 3617 "did not have to establish that the conduct she opposed was in fact a violation of the Federal Fair Housing Act ..., but only that she had a good faith, reasonable belief that the underlying actions of the [defendants] violated the law." *See also, Newell v. Heritage Senior Living, LLC*, 2016 WL 427371, at *7 (E.D. Pa. Feb. 3, 2016); *Ponce v. 480 East 21st St., LLC*, 2013 WL 4543622, at *3, n.4 (E.D.N.Y. Aug. 28, 2013).

80.    This is consistent with the treatment of retaliation claims under Title VII and the ADA. *See, e.g., Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171–72 (10th Cir. 2003) (plaintiffs could maintain retaliation claims based on a "reasonable good-faith belief " that the underlying conduct violated Title VII); *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1264–65 (10th Cir. 2001) (holding that "a reasonable, good faith belief that the statute has been violated suffices" to support an ADA retaliation claim).

81.    Courts look to the ADA and Title VII for precedent in evaluating FHA retaliation claims. *See, e.g., Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (relying on ADA and Rehabilitation Act precedent in evaluating FHA retaliation claim); *Walker v. City of Lakewood*, 272 F.3d 1114, 1126 (9th Cir. 2001) (stating that there was "no reason" not to apply principles set forth in Title VII and First Amendment retaliation cases to FHA retaliation claims).

82.    The plaintiff may establish a prima facie case of retaliation in violation of § 3617 by showing that: (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the two. *See, Walker*, 272 F.3d at 1128.

83.    The plaintiff clearly engaged in protective activity. He complained about his abuse and mistreatment by FT Humphrey and FT Archibald to supervisors at Taylor Hardin.

84.    Taylor Hardin discriminated against the plaintiff, a disabled person by virtue of his intellectual disability, in violation of the FHA, solely because of their disabilities. Baker was excluded from the benefits of the enjoyment of the

residential medical facility. This conduct followed in close temporal proximity to the plaintiff's complaints about the abuse and mistreatment he suffered at the Taylor Hardin from abuse and mistreatment by FT Humphrey and FT Archibald.

85.    In *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016), the Eleventh Circuit reiterated the instructions from the United States Supreme Court requiring Courts to give the Fair Housing Act a "broad and inclusive interpretation." (quoting City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 731, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995)).

86.    Taylor Hardin receives federal financial assistance, whether through Medicare and/or Medicaid, and/or other forms of federal assistance. Baker is a Medicare and Medicaid recipient. His stay at Taylor Hardin residential facility is funded predominantly with federal funds, including Social Security Disability benefits, as well as Medicare and Medicaid health insurance benefits.

87.    Baker  suffers intellectual disabilities, including Schizophrenia, aggression, bipolar disorder, and seizure disorders. He has been involuntarily committed to the Alabama Department of Mental Health for many years.

88.    Taylor Hardin provides residential services to those disabled individuals who are in need of institutional care. Taylor Hardin is subject to the terms of §504 of the Rehabilitation Act of 1973, as amended.

89.    The neglect, abuse, mistreatment and exploitation of Baker constitutes discrimination in violation of § 504, the ADA, and the FHA.

90.    Baker is entitled to all the damages for his State and federal rights pled in this Complaint including, but not limited to, damages for emotional distress.

91.    The United States Supreme Court in *Schultz v. Young Men's Christian Associates of the United States*, 139 F.3d 286, 291 (1st Cir. 1998), suggested that in a suit under § 504, "damages for emotional distress [might] be justified to punish patent misbehavior or the deliberate infliction of humiliation."

92.    Baker was subjected to a pattern and practice of neglect, abuse, mistreatment and exploitation during his residency at Taylor Hardin. Management knew or should have known of this yet did nothing to protect Baker. In fact, Taylor

Hardin punished Baker by either kicking him out of the group home or acting so harshly toward him that his family had no choice but to remove him for his own safety after his legal guardian and/or family complained of and reported Baker's neglect, mistreatment, exploitation and abuse.

93. Baker was subjected to neglect, humiliation, deliberate indifference, and/or mistreatment. His treatment was degrading and humiliating and created a dangerous situation for himself and other residents of Taylor Hardin. The employees of Taylor Hardin assigned to protect and care for Baker failed in their duties by failing to protect him from abuse, neglect, and mistreatment and by abusing and mistreating him and failing to report his abuse and mistreatment by FT Archibald and FT Humphrey.

94. The conduct of FT Humprhrey and FT Archibald assigned to protect Baker, as well as the actions or inactions of the other named Defendants, meets any intentionality requirements.

95. Baker respectfully demands compensatory and punitive damages under all Counts but also under the FHA, as well as attorney fees under the FHA and compensatory and punitive damages under the FHA. The FHA allows for the recovery of compensatory damages, punitive damages, and attorney fees. See 42 U.S.C. § 3613(c)(1)-(2).

## COUNT VIII
## VIOLATION OF AMERICANS WITH DISABILITIES ACT

96. Baker has intellectual disabilities. He is substantially limited in one or more of his major life activities and is clearly disabled within the meaning of the statute.

97. Taylor Hardin, as a residential care facility, is a public accommodation within the meaning of Title III of the ADA, and is thus obligated to follow the requirements of the ADA prohibiting discrimination against resident patients.

98. Under the requirements of Title III of the ADA, Taylor Hardin may not discriminate against individuals with disabilities, including Baker. Taylor Hardin discriminated against Baker based upon his disability. It neglected, abused, and mistreated and failed to protect him from abuse and neglect. This conduct was based upon his disabled status.

99.     It is unlawful under the ADA and the Rehabilitation Act to harass a disabled person. *See, e.g., Gaither v. Barron*, 924 F. Supp. 134 (M.D. Ala. 1996).

100.    "EEOC regulations to the ADA state that 'it is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this part.'" *Haysman v. Food Lion*, 893 F. Supp. 1092 (S. D. Ga. 1995) (citing 29 C.F.R. § 1630.12).

101.    Claims of harassment under the ADA and Rehab Act are analyzed "according to Title VII hostile work environment standards." *Haysman* at 1106.

## COUNT IX
## MENACING

102.    A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury. Ala. Code § 13A-6-23 (1975).

103.     Staff members of Taylor Hardin menaced Baker by their physical actions and placed him in fear of imminent serious physical injury.

104.    As a proximate result, Baker suffered injury and harm.

## COUNT X
## RETALIATION UNDER FHA, REHAB ACT, AND ADA

105.    The ADA expressly prohibits retaliation by private or public entities where an individual has opposed any act or practice unlawful under the ADA. *See, e.g.*, 42 U.S.C. § 12203; 28 C.F.R. § 35.134; 28 C.F.R. § 36.206; 29 C.F.R. § 1630.12.

106.    Section 504 of the Rehabilitation Act likewise specifically prohibits retaliation. It incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964. The anti-retaliation provision of Title VI incorporated by section 504 states:

No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with

any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e).

107. It is a violation of Section 504 and the ADA to intimidate, threaten, coerce, or discriminate against an individual who has engaged in a protected activity. Protected activities include filing a complaint, testifying, assisting in, or participating in an investigation or hearing under Section 504 or the ADA.

108. Judge Dubina, writing for the Eleventh Circuit, recognized the fear of retaliation that family members of the disabled have in making complaints about abuse or neglect. "Complainants, particularly staff and sometimes family members, may prefer to remain anonymous for fear of overt or subtle retaliation." *Id.* at 498. Alabama Disabilities Advocacy *Program v. J.S. Tarwater Developmental Center,* 97 F.3d 492 (11th Cir. 1996).

109. Baker made numerous complaints on his own behalf concerning allegations of neglect and mistreatment by FT Humphrey and FT Archibald.

110. In retaliation for the complaints, Taylor Hardin's employees increased their abuse and mistreatment of Baker.

111. All of the elements are met in this case. (1) Baker is undisputedly disabled. (2) As a disabled person, Baker was entitled to participate in Taylor Hardin's program. (3) Baker was excluded from the residential facilituy's programs because he complained to Taylor Hardin's management about abuse, mistreatment, and neglect that violates the ADA, § 504, anti-abuse provisions of the Alabama Department of Mental Health, and anti-retaliation provisions of the FHA. (4) It is undisputed that Taylor Hardin receives federal funding in the form of payments from Medicaid. Baker thus meets all the elements of a claim for intentional discrimination and retaliation.

112. The ADA expressly prohibits retaliation by private persons or public entities where an individual has opposed any act or practice unlawful under the ADA. *See, e.g.*, 42 U.S.C. § 12203; 28 C.F.R. § 35.134; 28 C.F.R. § 36.206; 29 C.F.R. § 1630.12.

113. Recognizing that individuals face liability for retaliation, Congress included in the original, and retained in the amended statute, an anti-retaliation clause which provides protection from retaliatory mistreatment, stating:

   It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 of this title.

114. This Anti-Retaliation provision makes clear that to coerce, threaten, or intimidate a person, or to interfere with a person in his or her exercise, enjoyment, or her helping others exercise their rights— constitutes a separate, and distinct violation of the Fair Housing Act (*See Hidden Village, LLC v. City of Lakewood, Ohio* (2013) ("Section 3617 nowhere says that it comes into play only when a violation of one of these other sections has also occurred."). In other words, retaliatory conduct is unlawful in and of itself.

115. An individual has standing to sue for retaliation pursuant to § 504 of the Rehabilitation Act when he is retaliated against for advocating for the rights of the disabled, even if the advocate is not himself disabled. *Barker v. Riverside County Office of Edu.*, 584 F.3d 821 (9th Cir. 2009). Because § 504 incorporates the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, an individual cannot be intimidated, threatened, coerced, discriminated against, or retaliated against by any entity or *person* for making a complaint, or for testifying, assisting or participating in any manner in an investigation, proceeding, or hearing. The court reasoned that "Congress recognized that disabled individuals may require assistance from others to defend their rights." *Id.* at 827.

116. The actions of ADMH and FT Humphrey and FT Archibald constitute clear violations of well-established anti-retaliation provisions designed for the protection of disabled persons and their advocates. Baker is entitled to the protections of the anti-retaliation provisions. *See, e.g., Barker v. Riverside County Office of Education*, Case No. 07-56313 (9th Cir. 2009).

117. The claim of retaliation under the ADA, Rehab Act, and FHA is brought against ADMH and against FT Humphrey and FT Archibald. Retaliation

claims are not limited to public entities. The ADA, FHA, and Rehab Act even allow for retaliation claims against *individuals. See, e.g., Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003) (holding that retaliation against an individual advocating for a disabled person is actionable under the ADA's anti-retaliation provisions); *see also*, 42 U.S.C. § 12203 (1995). The Court in *Shotz* also held that individuals may be sued for violating the ADA's anti-retaliation provisions, including retaliation against advocates for the disabled. *Id.* at 1179-80.

118.   The plaintiff made protected and immunized claims of abuse, harassment, and retaliation based upon his disabled status. He did so by complaining verbally to management at Taylor Hardin about the abuse, mistreatment, neglect, and harassment. Taylor Hardin staff retaliated against Baker for these complaints and doubled down on their harassment, abuse, mistreatment, and neglect of Baker.

119.   As a proximate result of the violation of the anti-retaliation provisions of the ADA, Rehab Act, and FHA, Baker suffered injury and harm.

## PROXIMATE CAUSATION

120.   All injuries suffered by Baker, mentally and physically, were proximately caused by the misconduct, actions, and omissions of Taylor Hardin.

## REQUEST FOR RELIEF

121.   For the conduct listed herein above, the Plaintiff respectfully requests the following relief:

  a.   Compensatory damages, punitive damages, attorney fees, costs and all other allowable recovery in such an amount as a jury or finder of fact may award against the Defendants in their individual capacity.

  b.   The Plaintiff does not seek monetary damages under the state law claims against the Department or any individual defendant sued in their official capacity. The only monetary damages sought are under statutory and state law claims against the individual Defendants sued in their individual capacities as well as monetary damages sought against the Department under the Rehab Act, as well as attorney fees, interest and

costs.

c.    Prospective injunctive relief barring any further contact with Baker by
      FT Humphrey and FT Archibald and barring any further abuse, neglect,
      exploitation or mistreatment of Baker; and

d.    All other such further in any way available at law or in equity.

## **JURY DEMAND**

The Plaintiff demands a trial by jury of all issues so triable in the case.

Respectfully submitted this 25th day of October, 2021.

                                          /s J. Michael Comer
                                         J. Michael Comer
                                         Patterson Comer Law Firm
                                         303 Main Ave., Ste. A
                                         Northport, AL 35476
                                         (205) 759-3939 Ph.
                                         (205) 759-3931 Fax

## <u>SERVICE OF PROCESS ADDRESSES</u>

Alabama Department of Mental Health
RSA Union Building
100 North Union Street
Montgomery, AL 36130-1410

FT Humphrey (first name and address unknown)

FT Archibald (first name and address unknown)